# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### (NASHVILLE DIVISION)

_____ )
BRENDA THURMAN, on Behalf of Herself ) 
and All Others Similarly Situated, )
          ) Case No. 3:05-CV-01001
         Plaintiff, ) Judge William J. Haynes, Jr.
          )
        v. )
          )
HCA INC., et. al., )
          )
         Defendants. )
_____ )

## STIPULATION OF SETTLEMENT

Counsel for Plaintiff Brenda Thurman ("Plaintiff") and counsel for Defendants HCA Inc. ("HCA"), Jack O. Bovender, Jr., Richard M. Bracken, and Robert Milton Johnson (collectively, "Defendants"), enter into this Stipulation of Settlement (the "Agreement" or the "Stipulation"), pursuant to Rule 23 of the Federal Rules of Civil Procedure.

## RECITALS

A.     On November 22, 2005, Plaintiff filed the above-captioned class action lawsuit (the "Action") in the United States District Court for the Middle District of Tennessee, Nashville Division (the "Court").

B.     In the Complaint, Plaintiff alleges a number of causes of action brought pursuant to § 502 of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1132, against Defendants.

C.     Plaintiff alleges that Defendants were fiduciaries of the HCA Inc. Retirement Plan

and 401(k) Plan (the "Plan") and that they breached fiduciary duties owed to the Plan's participants, including Plaintiff, by, among other things, continuing to permit investment in HCA stock and failing to take appropriate ameliorative action when such investments allegedly became imprudent. Plaintiff alleges that Defendants did not comply with their alleged duties to review, evaluate, and monitor the suitability of the Plan's investment in HCA stock and failed to provide accurate material information to the Plan's participants. The Complaint seeks equitable and compensatory relief pursuant to ERISA §§ 409 and 502(a)(2), specifically the restoration by Defendants to the Plan of losses allegedly arising as the result of Defendants' alleged breaches of fiduciary duties.

D. Plaintiff seeks in paragraphs 1, 22, and 23 of the Complaint, certification of a class consisting of:

> All current and former participants in the Plan for whose individual accounts the Plan held an interest in the common stock of HCA at any time from January 12, 2005 to the present.

Following an investigation into the facts, the Parties agreed that the class period should be limited to the period of time beginning on January 12, 2005 and running through and including November 17, 2006, which was the last day that the Plan invested in HCA stock. Accordingly, the "Settlement Class" or "Members of the Settlement Class" as used in this Agreement, shall include all persons who were participants in, or beneficiaries of the Plan for whose individual accounts the Plan held an interest in the common stock of HCA at any time between January 12, 2005 and November 17, 2006, excluding Defendants herein, all officers and directors of Defendant HCA during the class period, members of Defendants' immediate families, and the heirs, successors or assigns of any of the foregoing.

E. Defendants vigorously deny each and every allegation of wrongdoing made in the

2

Action and contend that they have no liability in the Action. Defendants specifically deny the allegations that some or all of them were fiduciaries under ERISA, that the actions complained of were within the scope of any fiduciary duties owed to the Plan's participants, or that the Defendants breached any fiduciary duties or any other provisions of ERISA in connection with the investment, acquisition, or retention of HCA stock by the Plan during the Class Period, or at any time, and further deny that they in any way misrepresented the financial performance or security of the operations of HCA or the value of HCA stock to Plan participants. Defendants contend that the breaches alleged do not fall within the scope of the fiduciary duties, if any, they owed to participants, and that Defendants acted prudently in all respects. Defendants further contend that neither the Plan nor its participants suffered any loss caused by the Defendants' alleged breaches of fiduciary duties.

      F.      On November 29, 2007, the parties mediated the case before retired federal judge Hon. Nicholas J. Politan. As a result of this mediation, the parties reached an agreement to settle the case for $3,000,000 cash. The parties executed a memorandum of understanding on February 6, 2008, memorializing their agreement.

      G.      Class Counsel have conducted an extensive investigation into the facts, circumstances, and legal issues associated with the Action. This investigation has included: (i) inspecting, reviewing, and analyzing documents produced by or otherwise relating to HCA, including numerous public documents, including, but not limited to, press releases and regulatory filings; (ii) researching the applicable law with respect to the claims asserted in the Action and the potential defenses thereto; (iii) inspecting, reviewing, and analyzing numerous documents concerning the Plan and the administration of the Plan, particularly as such documents pertain to the investment by the Plan in employer stock; (iv) participating in

numerous face-to-face and telephonic meetings with Defendants' counsel and in settlement negotiations.

H.     Defendants' counsel also have conducted a thorough investigation into Plaintiff's claims, the underlying events and transactions alleged in the Complaint, and the operation and administration of the Plan, including interviews with certain employees of HCA.  Defendants' counsel have reviewed numerous documents and made a thorough study of the legal principles applicable to Plaintiff's actual and potential claims in the Action.

I.     Based on their investigation of the merits of this Action, litigation of this Action, and knowledge and experience pursuing such actions generally, Class Counsel believe that the proposed settlement provided for herein (the "Settlement") will provide substantial benefits to the Settlement Class.  When the benefits conferred by the Settlement are weighed against the attendant risks of continuing the prosecution of the Action, Class Counsel believe that the Settlement represents a reasonable and fair resolution of the claims of the Settlement Class.  In reaching such conclusion, Class Counsel have considered, among other things, the risks of litigation (including the risks of establishing both liability and loss to the Plan) and appeal, the time necessary to achieve a final resolution through litigation (including appeal), the complexity of the claims set forth in the Complaint, the ability of Defendants to withstand judgment, the existence of insurance coverage, and the benefits accruing to the Plan's participants under the Settlement.

J.     Although Defendants continue to deny all liability with respect to any and all of the claims alleged in the Complaint, Defendants nevertheless consider it desirable that any and all possible controversies and disputes that arise out of or relate to the matters, transactions, and occurrences referenced in the Complaint and/or related to the Plan and the investment options in

the Plan, including, without limitation, the HCA stock held by the Plan, be conclusively settled and terminated on the terms and conditions set forth below.  The settlement of the Action and the attendant final dismissal of the Complaint will avoid the substantial expense, inconvenience, and risk of continued litigation and will bring the claims and potential claims of Plaintiff and the Settlement Class to an end.

K.      Plaintiff and Defendants (collectively, the "Parties") have reached this Settlement by and through their respective undersigned counsel, with the assistance and guidance of a mediator on the terms and conditions set forth in this Agreement.

L.      Defendants, by entering into this Agreement, do not admit to the truth of any allegation contained in the Action or to any fault, liability, or wrongdoing whatsoever.

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by the Parties, in consideration of the promises, covenants and agreements herein described, and the Parties, intending to be legally bound, do hereby mutually agree as follows, subject to the approval of the Court:

## Stipulation to Class Certification of the Settlement Class

1.      The Parties stipulate and agree that for settlement purposes only this Action shall proceed as a non-opt out class action pursuant to Federal Rules of Civil Procedure 23(a)(1)-(a)(4), (b)(1), and (b)(2), with Plaintiff's counsel, Vianale & Vianale LLP, Gainey & McKenna, and Harwood Feffer LLP as co-lead Class Counsel, and Bramlett Law Offices, as local counsel, and with a Settlement Class as defined in Paragraph D of this Agreement.

## Establishment and Maintenance of Settlement Fund

### A.      Creation of the Settlement Fund

2.      HCA agrees to pay into an interest bearing escrow account established and

Case 3:05-cv-01001   Document 29   Filed 12/19/08   Page 5 of 26 PageID #: 184

maintained by Vianale & Vianale LLP within five business days following preliminary approval

of the settlement the sum of three million dollars ($3,000,000)(the "Cash Settlement Amount").

The Cash Settlement Amount shall be held in a segregated account entitled "HCA ERISA

Litigation Settlement Fund," which shall be held on behalf of Plaintiff and the Class at an

institution designated by Vianale & Vianale LLP, which firm shall serve as escrow agent (the

"Escrow Account"). The Cash Settlement Amount and any interest earned thereon shall be the

"Settlement Fund." If the Cash Settlement Amount is not delivered to the Escrow Agent as set

forth herein, Plaintiff's and the Class's remedy shall be to seek to enforce compliance with the

Stipulation. In such event, interest will accrue and be payable by the Defendants at a rate of 10%

per annum from the expiration of the funding date until the date the Cash Settlement Amount is

transferred to the Escrow Agent.

### B. Handling and Disbursement of Funds by the Escrow Agent

3.      No monies will be disbursed from the Settlement Fund until after Complete

Settlement Approval as defined in Paragraph 15 except:

(a)     As provided for in this Agreement or approved by prior order of the Court;

(b)     To pay Taxes and Tax Expenses on the income earned by the HCA

ERISA Litigation Settlement Fund. Taxes and Tax Expenses shall be paid out of the Settlement

Fund, shall be considered to be a cost of administration of the Settlement and shall be timely paid

by the Escrow Agent without prior Order of Court; and

(c)     To pay notice and administration expenses as provided for in Paragraph 8,

below.

4.      The Escrow Agent shall invest the Settlement Fund deposited pursuant to

Paragraph 2 above, in excess of $100,000.00, in instruments backed by the full faith and credit of

6

the United States Government or fully insured by the United States Government or an agency thereof and shall reinvest the proceeds of these instruments as they mature in similar instruments at their then current market rates. Any funds held in escrow in an amount of less than $100,000.00 may be held in an interest-bearing account insured by the FDIC. The Escrow Agent shall bear all risks related to investment of the Settlement Fund.

5.      The Escrow Agent shall not disburse the Settlement Fund except as provided in the Stipulation, by an order of the Court, or with the written agreement of counsel for Defendants and Class Counsel.

6.      Subject to further orders and/or directions as may be made by the Court, the Escrow Agent is authorized to execute such transactions on behalf of the Class Members as are consistent with the terms of the Stipulation.

7.      All funds held by the Escrow Agent shall be deemed and considered to be in *custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed pursuant to the Stipulation, further order(s) of the Court, or the written agreement of counsel for Defendants and Class Counsel.

8.      After transfer of the Cash Settlement Amount to the Escrow Agent, pursuant to paragraph 2, the Escrow Agent may withdraw up to $100,000 to pay costs and expenses reasonably and actually incurred in connection with providing notice to the Class and locating Class Members, administering and distributing the Settlement Fund to Authorized Claimants, and paying escrow fees, taxes and costs ("Notice and Administration Expenses"), if any. To the extent that the Notice and Administration Expenses exceed $100,000, after Complete Settlement Approval the Escrow Agent may withdraw such amounts from the Settlement Fund as may be necessary to pay any additional Notice and Administration Expenses without further order of the

7

Court.

### C.  Tax Expenses

9.      The Settling Parties and the Escrow Agent agree to treat the Settlement Fund as being at all times a "qualified settlement fund" within the meaning of Treas. Reg. Sec. 1.468B-1. In addition, the Escrow Agent shall timely make such elections as necessary or advisable to carry out the provisions of this paragraph, including the "relation-back election" (as defined in Treas. Reg. Sec. 1.468B-1) back to the earliest permitted date.  Such elections shall be made in compliance with the procedures and requirements contained in such regulations.  It shall be the responsibility of the Escrow Agent to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

10.     For the purpose of §468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" shall be the Escrow Agent.  The Escrow Agent shall timely and properly file all informational and other tax returns necessary or advisable with respect to the Settlement Fund (including without limitation the returns described in Treas. Reg. Sec. 1.468B-2(k)).  Such returns (as well as the election described in ¶2.8(a) hereof) shall be consistent with this paragraph and in all events shall reflect that all Taxes (including any estimated Taxes, interest or penalties) on the income earned by the cash portion of the Settlement Fund shall be paid out of the Settlement Fund as provided for herein.

11.     Defendants, their attorneys and insurers shall have no liability or responsibility for any taxes (including any estimated Taxes, interest or penalties) arising with respect to the income earned by the Settlement Fund, including any Taxes or tax detriments that may be imposed upon the Defendants or their counsel with respect to any income earned by the Settlement Fund for

8

any period during which the Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes ("Taxes"). All (a) Taxes and (b) expenses and costs incurred in connection with the operation and implementation of this paragraph (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in this paragraph) ("Tax Expenses"), shall be paid out of the Settlement Fund; in all events Defendants and their counsel shall have no liability or responsibility for the Taxes or the Tax Expenses. The Escrow Agent shall indemnify and hold each of the Defendants and Defendants' Counsel and person(s) and/or entities paying the Settlement Fund harmless for Taxes and Tax Expenses (including, without limitation, Taxes payable by reason of any such indemnification). Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement Fund and shall be timely paid by the Escrow Agent out of the Settlement Fund without prior order from the Court, and the Escrow Agent shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to Authorized Claimants any funds necessary to pay such amounts including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treas. Reg. Sec. 1.468B-2(l)(2)); neither the Defendants nor Defendants' Counsel are responsible nor shall they have any liability therefore. The parties hereto agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this paragraph.

**Preliminary Approval**

12.     As soon as practicable following the complete execution of this Agreement by the

9

Parties, the parties shall file with the Court a Motion for Preliminary Approval and shall submit a proposed order substantially in the form attached as Exhibit 1 (the "Preliminary Approval Order"), including proposed class notice substantially in the form attached as Exhibit 2 (the "Class Notice"). Such motion shall request that the Court hold a fairness hearing at least forty-five (45) days after the mailing of the Class Notice, for the Court to consider whether the terms of this Settlement are fair, reasonable, and adequate and thus should be finally approved and implemented by the Court pursuant to Fed. R. Civ. P. 23(e).

13.     If the Settlement (including any modification thereto made with the consent of the Parties as provided for herein) is preliminarily approved by the Court, Plaintiff shall cause Class Notice to be transmitted in the manner and on the date set in the Preliminary Approval Order to the persons directed by the Court. Costs associated with the service of Class Notice shall be paid from the Settlement Fund. Defendants shall provide counsel for Plaintiff all information necessary to effect notice and administration of the settlement of the action and shall otherwise cooperate in the notice and administration process.

## Final Approval

14.     If the Settlement (including any modification thereto made with the consent of the Parties as provided for herein) is preliminarily approved by the Court and authorized by the Independent Fiduciary (as provided in Paragraph 28(b) of this Agreement), the Parties shall promptly move the Court to enter an Order and Final Judgment substantially in the form attached as Exhibit 3 (the "Final Approval Order"), which among other things:

(a)     Approves the Settlement, adjudges the terms thereof to be fair, reasonable, adequate, and in the best interests of the Settlement Class, and directs consummation of the Settlement in accordance with the terms and conditions of the Stipulation;

10

(b)     Certifies the Settlement Class as a non-opt out class meeting the applicable requirements for a settlement class imposed by Federal Rule of Civil Procedure 23;

(c)     Determines that the requirements of Federal Rule of Civil Procedure 23 and due process have been satisfied in connection with the distribution of the Class Notice to the Settlement Class;

(d)     Reserves jurisdiction over this Action and over any and all future proceedings concerning the administration and consummation of the Settlement to the extent any party deems necessary;

(e)     Dismisses the Action with prejudice as to Defendants and operates to extinguish, discharge and release any and all "Released Claims" against the "Releasees" (as defined in Paragraph 16 of this Agreement), without costs except as herein provided, said dismissal subject only to compliance by the Parties with the terms of this Agreement and any order of the Court concerning this Agreement;

(f)     Bars and enjoins Plaintiff, Members of the Settlement Class, and the Plan from the institution and prosecution, either directly or indirectly, of any other actions in any court asserting any and all Released Claims against any and all Releasees;

(g)     Permanently enjoins Plaintiff, Members of the Settlement Class, and the Plan from asserting, commencing, prosecuting or continuing, either directly, individually, representatively, derivatively or in any other capacity, any other actions in any court asserting such Released Claims or from receiving any additional recovery from any Releasees with respect thereto; and

(h)     Rules on the application by Plaintiff's counsel for an award of attorney's fees and expenses.

11

**Complete Settlement Approval**

15.     For purposes of this Agreement, "Complete Settlement Approval" shall occur when all of the following have taken place: (a) entry of the Final Approval Order approving the Settlement; and (b) the expiration of all applicable appeal periods for an appeal of the Final Approval Order without any appeal having been filed or, if an appeal is taken, upon entry of an order affirming the Final Approval Order and the expiration of any applicable period for the reconsideration, rehearing, or appeal of such affirmance without any motion for reconsideration or rehearing or further appeal having been filed.

**Release**

16.     Except as provided in Paragraphs 19 and 38, upon Complete Settlement Approval, Plaintiff, Members of the Settlement Class, and the Plan (subject to review and approval by the Independent Fiduciary) shall release any and all claims of any nature whatsoever (including claims for any and all losses, damages, unjust enrichment, attorney fees, disgorgement of fees, litigation costs, injunction, declaration, contribution, indemnification or any other type or nature of legal or equitable relief) for losses suffered by the Plan, Plan participants, or beneficiaries as a result of, arising out of, or relating in any way to the investment in, purchase, sale, or holding of the stock of HCA Inc. ("Released Claims") (i) against any and all of the Defendants, and the current or former officers, directors, employees, insurers, attorneys, affiliates, subsidiaries, committees, managers, fiduciaries, or agents of any Defendant, including, without limitation, HCA Inc., and current or former members of its board of directors, and any fiduciary of the Plan, excepting the Independent Fiduciary engaged by the Plan's fiduciaries pursuant to Paragraph 28(b) of this Agreement ("Releasees"), whether accrued or not, whether

12

already acquired or acquired in the future, whether known, unknown, or unsuspected, in law or equity, as well as any claim or right obtained by assignment, brought by way of demand, complaint, cross-claim, counterclaim, third party claim or otherwise, arising out of any or all of the acts, omissions, facts, matters, transactions or occurrences that are or were alleged, asserted, or set forth in the Complaint, or otherwise the subject of the Complaint, or would be barred by principles of *res judicata* if the claims asserted in the Complaint had been fully litigated and resulted in a final judgment in Defendants' favor, including but not limited to claims that Defendants and any fiduciaries of the Plan breached ERISA fiduciary duties in connection with (a) the acquisition and holding of HCA stock by the Plan or the Plan's participants, (b) the appointment and/or monitoring of the Plan's fiduciaries with respect to HCA stock, or (c) the provision of information to the Plan's fiduciaries or participants and beneficiaries of the Plan regarding HCA or HCA stock; and (ii) against the applicable insurance policy, to wit, National Union Fire Insurance Company of Pittsburgh, Pa. Policy No. 493-63-32, or any other applicable policy, with respect to coverage for the Released Claims under clause (i) of this Paragraph 16.

17. Except as provided in Paragraphs 19 and 38, upon Complete Settlement Approval, Plaintiff, Members of the Settlement Class, and the Plan expressly waive and relinquish, to the fullest extent permitted by law, any and all provisions, rights and benefits conferred by (a) § 542 of the California Civil Code, which provides that a "general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor," and (b) any similar state, federal, or other law, rule or regulation or principle of common law of any domestic or foreign governmental entity. Plaintiff, Members of the Settlement Class, and the Plan may hereafter discover facts other than or different from those

13

that they know or believe to be true with respect to the subject matter of the Released Claims with respect to any Releasees, but Plaintiff, Members of the Settlement Class, and the Plan hereby expressly waive and fully, finally, and forever settle and release any known or unknown, suspected or unsuspected, asserted or unasserted, contingent or non-contingent claim with respect to the Released Claims, whether concealed or hidden, without regard to the subsequent discovery or existence of such other or different facts.

18.     The Parties intend the Settlement to be a final and complete resolution of all disputes asserted or which could have been asserted by Plaintiff, the Settlement Class, the Plan, and Class Counsel against the Releasees with respect to the Released Claims.  Accordingly, Plaintiff and Defendants agree not to assert in any forum that the claims asserted in the Action were brought by Plaintiff or defended by Defendants in bad faith or without a reasonable basis. The Parties shall not assert any contention regarding a violation of Rule 11 of the Federal Rules of Civil Procedure relating to the prosecution, defense, or settlement of the Action, and agree that, except as expressly set forth herein, each party shall bear his, her, or its own costs and expenses, including attorney fees.

19.     Notwithstanding any other provision of this Stipulation of Settlement, Plaintiff and the Members of the Settlement Class shall not be deemed to have waived any claim by any individual Plan participant concerning his or her eligibility for benefits under the Plan or to contest the correct amount of such benefit except to the extent that such claim may relate to the claims asserted in the Complaint.  Likewise, the Plan, for itself and on behalf of its participants, shall not be deemed to have waived its claims or any right to recovery (if any) under the federal securities laws or its right to participate in any settlement or recovery in or such matters as could have been brought in the related securities law action, pending in this Court under the caption *In*

14

*re HCA Inc. Securities Litigation,* Master File No. 05-Civ-00960 (WJH) (M.D. Tenn.).

**Payment of Settlement Administrative Expenses**

20.     All expenses incurred in the administration of the Settlement shall be paid and payable from the Settlement Fund.

**Submission to Jurisdiction of the Court**

21.     Plaintiff, the Plan (subject to the approval of the Independent Fiduciary pursuant to Paragraph 28(b)), each and every Member of the Settlement Class, and each and every Defendant submits to the jurisdiction of the Court and will be bound by the terms of this Agreement, including, without limitation, any and all releases, conditioned on the Final Approval of the Settlement and subject to their right to object, as well as any other order of the Court including, without limitation, the Order and Final Judgment barring further litigation against any of the Releasees on the Released Claims.

**Class Notice**

22.     Plaintiff or an administrator designated by Plaintiff shall send the Class Notice by mail to each Member of the Settlement Class at the address maintained by the Plan for such individual.  The Class Notice shall be mailed within thirty (30) days after entry of the Preliminary Approval Order.

**Payment of Fees and Expenses of the Independent Fiduciary**

23.     Defendants shall pay all reasonable fees and expenses incurred by the Independent Fiduciary in the course of evaluating the Settlement (as described in Paragraph 28(b) of this Agreement), including fees and expenses incurred by attorneys, consultants, and advisers retained or employed by the Independent Fiduciary.

**Plaintiff's Attorneys' Fees and Expenses**

15

24.     Defendants shall not oppose an application to the Court by Class Counsel for payment from the Settlement Fund of attorneys' fee of up to 30% of the Settlement Fund and payment of Plaintiff's attorneys' expenses relating to the prosecution and litigation of the Action, and the administration and implementation of the Agreement.

25.     Class Counsel shall be solely responsible for allocating the attorneys' fees and expenses among counsel, and no Defendant shall bear responsibility for this allocation or be subject to any claims or suit under this Agreement for the same.

### Case Contribution Award To Plaintiff

26.     Defendants agree not to oppose an application to the Court for payment to plaintiff Brenda Thurman of a "Case Contribution Award" of Two Thousand Five Hundred U.S. Dollars and no cents ($2,500.00), to be paid from the Settlement Fund.  Class Counsel shall be solely responsible for allocating the Case Contribution Award to the Plaintiff, and Defendants shall not bear any responsibility for this allocation or be subject to any claims or suit under this Agreement for the same.

### Right to Withdraw from the Settlement

27.     Each of the Parties shall have the option to withdraw unilaterally from and terminate the Settlement in the event that: (a) either the Preliminary Approval Order or the Final Approval Order referred to above is not entered substantially in the forms specified herein, including such modifications thereto as may be ordered by the Court with the consent of the Parties; (b) the Settlement is not approved by the Court or is disapproved or materially modified upon appeal; or (c) any of the conditions to this Settlement are not fulfilled.

28.     Defendants shall have the right to withdraw from this Settlement and terminate the Agreement if:

16

(a)    before the issuance of the Final Approval Order by the Court, the U.S. Department of Labor (the "DOL") files any objection to the Agreement or Settlement in any court, brings a claim against any Releasees relating to the Released Claims, or notifies any Releasee that it intends to file such a Claim; or

(b)    an independent fiduciary retained by appropriate Plan fiduciaries (the "Independent Fiduciary") evaluates but fails to approve the Settlement. Specifically, the Settlement is contingent upon the Independent Fiduciary: (i) approving the Settlement, including the Release provided in Paragraph 16, above, on behalf of the Plan, coextensive with the release from Plaintiff and the Members of the Settlement Class, and (ii) authorizing the Settlement in accordance with Prohibited Transaction Class Exemption 2003-39. Upon execution of this Stipulation of Settlement, the Plans' fiduciaries shall move promptly to seek to obtain this authorization or finding. All Parties shall cooperate in providing information to the Independent Fiduciary, as requested.

29.    In the event that the Settlement is terminated pursuant to Paragraph 27 or 28 of this Agreement, then: (a) the Settlement proposed herein shall be of no further force and effect; (b) the agreements and stipulations in this Agreement concerning class definition or class certification will not be used as evidence or argument to support class certification or class definition, and Defendants will retain all rights to oppose class certification; and (c) this Agreement and all negotiations, proceedings and statements relating thereto, and any amendment thereof, shall be null and void, shall not be submitted or admitted in the Action or any other proceedings, and shall be without prejudice to any party hereto, and each party shall be restored to his, her or its respective position as it existed prior to the execution of this Stipulation.

30.    The provisions of this Agreement are not severable.

17

**<u>Disposition of Settlement Fund in the Event of Termination of Settlement</u>**

31.     In the event that the Stipulation is not approved, or is terminated, canceled, or fails to become effective for any reason, the Settlement Fund (including interest and other income earned thereon), less costs of notice and administration actually incurred or due and owing in connection with the settlement and any tax due and owing, shall be refunded to Defendant HCA, with the understanding that HCA and the insurer shall make arrangements with respect to the return to the insurer of the portion of the Settlement Fund paid by the insurer. Neither Class Counsel, Plaintiffs, the Escrow Agent, nor any Class Member shall have any liability with respect to the disposition of the Settlement Fund once it has been refunded to HCA.

**<u>Authority</u>**

32.     Each of the attorneys executing the Agreement on behalf of one or more of the Parties warrants and represents that he or she has been duly authorized and empowered to execute this Stipulation on behalf of his or her respective client or clients.

**<u>Stipulation of Settlement Not an Admission</u>**

33.     The provisions contained in this Agreement and all negotiations, statements, and proceedings in connection therewith shall not be deemed a presumption, a concession, or an admission by any Defendant of any fault, liability, or wrongdoing as to any fact or claim alleged or asserted in the Action or any other actions or proceedings and shall not be interpreted, construed, deemed, invoked, offered, or received in evidence or otherwise used by any person in these or any other actions or proceedings, whether civil, criminal, or administrative, except in a proceeding to enforce the terms or conditions of this Stipulation. Defendants have denied and continue to deny each and every claim alleged in the Action. Accordingly, neither this

18

Agreement nor the Settlement nor any act performed or document executed pursuant to or in furtherance of this Agreement or the Settlement: (a) is or may be deemed to be or may be used as an admission of, or evidence of, the validity or invalidity of any Released Claim, or of any wrongdoing or liability or lack thereof of HCA or any Releasee; or (b) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission or lack thereof of HCA or any Releasee in any civil, criminal, or administrative proceeding in any court, administrative agency, or other tribunal. HCA and the Releasees may file the Agreement and/or the Final Approval Order in any action that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata,* collateral estoppel, claim or issue preclusion, release, good-faith settlement, judgment bar or reduction, or any other similar defense or counterclaim. The Parties and their counsel, and each of them, agree, to the extent permitted by law, that all agreements made relating to the confidentiality of information shall survive and be unaffected by this Agreement.

## Counterparts

34.     This Stipulation may be executed in any number of actual or telecopied counterparts and by each of the different parties thereto on several counterparts, each of which when so executed and delivered shall be an original. The executed signature page(s) from each actual or telecopied counterpart may be joined together and attached to one such original and shall constitute one and the same instrument.

## Waiver

35.     The waiver by any party of any breach of this Agreement shall not be deemed or construed as a waiver of any other breach, whether prior, subsequent, or contemporaneous, of this Agreement.

## Arm's-Length Negotiations

36.     The Parties represent and warrant that they are voluntarily entering into this Agreement as a result of arm's-length negotiations among their counsel, that in executing this Agreement they are relying solely upon their own judgment, belief and knowledge, and the advice and recommendations of their own independently selected counsel.  Each Party assumes the risk of mistake as to facts or law.  None of the Parties hereto shall be considered to be the drafter of this Agreement or any provision hereof for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter hereof.

## Entire Agreement; Amendments

37.     This Agreement and the attached Exhibits, incorporated herein by reference, constitute the entire agreement of the Parties with respect to the subject matter hereof, and may not be amended, or any of their provisions waived, except by a writing executed by all Parties hereto.  The Parties: (a) acknowledge that it is their intent to consummate this Agreement; and (b) agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of the Stipulation and to exercise their best efforts to accomplish the foregoing terms and conditions of the Stipulation.  The Parties intend this Agreement to be a final and complete resolution of all disputes between them, relating to or arising out of the subject matter of the Action, or which otherwise constitute Released Claims.  Accordingly, the Parties agree that the terms of the Agreement represent a good-faith settlement of the claims, reached voluntarily after consultation with experienced counsel.

## Related Litigation

38.     Nothing herein shall in any way prohibit the Plan, Plaintiff, or Members of the

20

Settlement Class from participating in a settlement or recovery (if any) in the related securities law action, pending in this Court under the caption *In re HCA Inc. Securities Litigation,* Master File No. 05-Civ-00960 (WJH).

## Successors and Assigns

39.    This Agreement, upon becoming operative, shall be binding upon and inure to the benefit of the Parties hereto and their respective successors, assigns, heirs, estates, executors, and administrators and upon any corporation, partnership, or entity into or with which any Party may merge or consolidate.

## Governing Law

40.    This Agreement shall be governed by the laws of the United States, including federal common law, except to the extent that, as a matter of federal law, state law controls, in which case Tennessee law will apply without regard to conflict of law principles.

## Best Efforts

41.    The Parties and their attorneys agree to cooperate fully with one another in seeking the Court's approval of this Agreement and the Settlement and to use their best efforts to effect the confirmation of this Agreement and the Settlement.

This 26ᵗʰ day of November, 2008.

COUNSEL FOR PLAINTIFF

*Julie Prag Vianale*

**Julie Prag Vianale**
**VIANALE & VIANALE LLP**
2499 Glades Road, Suite 112
Boca Raton, FL 33431
Telephone:     (561) 392-4750
Facsimile:     (561) 392-4775

21

Thomas J. McKenna
**GAINEY & MCKENNA**
295 Madison Avenue, 4th Floor
New York, NY 10017
Telephone:    (212) 983-1300
Facsimile:     (212) 983-0383

Robert I. Harwood
**HARWOOD FEFFER LLP**
488 Madison Avenue
New York, NY 10022
Telephone:    (212) 935-7400
Facsimile:     (212) 753-3630

Paul Kent Bramlett
**Bramlett Law Offices**
P.O. Box 150734
Nashville, TN 37215
Telephone:    (615) 248-2828
Facsimile:     (615) 254-4116

COUNSEL FOR DEFENDANTS

Peter Winik
**LATHAM & WATKINS LLP**
555 Eleventh Street
Suite 1000
Washington, DC 20004
Telephone:    (202) 637-2224
Facsimile:     (202) 637-2201

Steven Riley
**RILEY, WARNOCK &
JACOBSON, PLC**
1906 West End Avenue
Nashville, TN 37203
Telephone:    (615) 320-3700

22

Thomas J. McKenna
**GAINEY & MCKENNA**
295 Madison Avenue, 4th Floor
New York, NY 10017
Telephone:     (212) 983-1300
Facsimile.      (212) 983-0383

Robert I. Harwood
Jeffrey Norton
**HARWOOD FEFFER LLP**
488 Madison Avenue
New York, NY 10022
Telephone:     (212) 935-7400
Facsimile:      (212) 753-3630

Paul Kent Bramlett
**Bramlett Law Offices**
P.O. Box 150734
Nashville, TN 37215
Telephone:     (615) 248-2828
Facsimile:      (615) 254-4116

COUNSEL FOR DEFENDANTS

Peter Winik
**LATHAM & WATKINS LLP**
555 Eleventh Street
Suite 1000
Washington, DC 20004
Telephone:     (202) 637-2224
Facsimile:      (202) 637-2201

Steven Riley
**RILEY, WARNOCK &**
**JACOBSON, PLC**
1906 West End Avenue
Nashville, TN 37203
Telephone:     (615) 320-3700

22

_Thomas J. M^c Kenna_

Thomas J. McKenna
**GAINEY & MCKENNA**
295 Madison Avenue, 4th Floor
New York, NY 10017
Telephone:    (212) 983-1300
Facsimile:    (212) 983-0383

Robert I. Harwood
Jeffrey Norton
**HARWOOD FEFFER LLP**
488 Madison Avenue
New York, NY 10022
Telephone:    (212) 935-7400
Facsimile:    (212) 753-3630

Paul Kent Bramlett
**Bramlett Law Offices**
P.O. Box 150734
Nashville, TN 37215
Telephone:    (615) 248-2828
Facsimile:    (615) 254-4116

COUNSEL FOR DEFENDANTS

Peter Winik
**LATHAM & WATKINS LLP**
555 Eleventh Street
Suite 1000
Washington, DC 20004
Telephone:    (202) 637-2224
Facsimile:    (202) 637-2201

Steven Riley
**RILEY, WARNOCK &
JACOBSON, PLC**
1906 West End Avenue
Nashville, TN 37203
Telephone:    (615) 320-3700

22

Thomas J. McKenna
**GAINEY & MCKENNA**
295 Madison Avenue, 4th Floor
New York, NY 10017
Telephone:     (212) 983-1300
Facsimile:      (212) 983-0383

Robert I. Harwood
Jeffrey Norton
**HARWOOD FEFFER LLP**
488 Madison Avenue
New York, NY 10022
Telephone:     (212) 935-7400
Facsimile:      (212) 753-3630

Paul Kent Bramlett
**Bramlett Law Offices**
P.O. Box 150734
Nashville, TN 37215
Telephone:     (615) 248-2828
Facsimile:      (615) 254-4116

COUNSEL FOR DEFENDANTS

Peter Winik
**LATHAM & WATKINS LLP**
555 Eleventh Street
Suite 1000
Washington, DC 20004
Telephone:     (202) 637-2224
Facsimile:      (202) 637-2201

Steven Riley
**RILEY, WARNOCK &**
**JACOBSON, PLC**
1906 West End Avenue
Nashville, TN 37203
Telephone:     (615) 320-3700

22

Thomas J. McKenna
**GAINEY & MCKENNA**
295 Madison Avenue, 4th Floor
New York, NY 10017
Telephone:    (212) 983-1300
Facsimile:    (212) 983-0383

Robert I. Harwood
Jeffrey Norton
**HARWOOD FEFFER LLP**
488 Madison Avenue
New York, NY 10022
Telephone:    (212) 935-7400
Facsimile:    (212) 753-3630

Paul Kent Bramlett
**Bramlett Law Offices**
P.O. Box 150734
Nashville, TN 37215
Telephone:    (615) 248-2828
Facsimile:    (615) 254-4116

COUNSEL FOR DEFENDANTS

Peter Winik
**LATHAM & WATKINS LLP**
555 Eleventh Street
Suite 1000
Washington, DC 20004
Telephone:    (202) 637-2224
Facsimile:    (202) 637-2201

Steven Riley
**RILEY, WARNOCK &**
**JACOBSON, PLC**
1906 West End Avenue
Nashville, TN 37203
Telephone:    (615) 320-3700

22