# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### (NASHVILLE DIVISION)

| | |
|---|---|
| BRENDA THURMAN, on Behalf of Herself and All Others Similarly Situated, ) ) ) | |
| Plaintiff, ) ) | Case No. 3:05-CV-01001 Judge William J. Haynes, Jr. |
| v. ) ) | |
| HCA INC., et al., ) ) | |
| Defendants. ) ) | |

**PLAINTIFF BRENDA THURMAN'S MOTION TO CERTIFY CLASS FOR SETTLEMENTPURPOSES AND FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND INCORPORATED MEMORANDUM OF LAW**

Kenneth J. Vianale
Julie Prag Vianale
**VIANALE & VIANALE LLP**
2499 Glades Road, Suite 112
Boca Raton, FL 33431
Tel: (561) 392-4750

Robert I. Harwood
Samuel K. Rosen
**HARWOOD FEFFER LLP**
488 Madison Avenue, 8th Floor
New York, NY 10022
Tel: (212) 935-7400

Thomas J. McKenna
**GAINEY & MCKENNA**
295 Madison Avenue, 4th Floor
New York, NY 10017
Tel: (212) 983-1300

*Co-Lead Counsel for the Plaintiff*

Paul Kent Bramlett
**BRAMLETT LAW OFFICES**
P.O. Box 150734
Nashville, TN 37215
Tel: (615) 248-2828

*Liaison Counsel for Plaintiff*

March 16, 2009

# TABLE OF CONTENTS

I.   INTRODUCTION ............................................................................................................... 1

II.  HISTORY AND BACKGROUND OF THE LITIGATION AND THE SETTLEMENT ....... 2

   A.  Factual Basis For Lawsuit ........................................................................................ 2
   B.  Progress Of The Litigation And Settlement Negotiations ...................................... 3
   C.  The Parties Draft A Memorandum of Understanding and Stipulation of Settlement .......... 4
   D.  The Plan Of Allocation ............................................................................................ 4
   E.  The Settlement Has Been Evaluated And Approved by an Independent Fiduciary ............. 5
   F.  The Court-Approved Notice Was Sent to 113,649 Class Members and Only One
      Has Voiced Any Objection ........................................................................................ 5

III. ARGUMENT ..................................................................................................................... 6

   A.  The Court Should Certify The Settlement Class For Final Approval ...................... 6

     1.  The Proposed Class Meets the Requirements of Rule 23(a) ............................ 7

       a.  The Class is so Numerous that Joinder of All Members is Impracticable ................... 7
       b.  There are Questions of Law or Fact Common to the Class .......................... 8
       c.  The Claims of the Proposed Class Representative are Typical of
          Those of The Class .............................................................................. 8
       d.  Brenda Thurman Has Fairly and Adequately Protected the Interests
          of the Class ........................................................................................ 9

     2.  The Class Satisfies the Criteria of Rule 23(b)(1) ............................................ 10

     3.  Rule 23(g) ........................................................................................................ 12

   B.  The Proposed Settlement Is Fair, Reasonable, And Adequate To The Class ..................... 13

     1.  The Law Favors and Encourages Settlements ................................................ 13

     2.  The Sixth Circuit's Standards Governing Class Action Settlement ................ 15

       a.  The Settlement Is the Result of Arms' Length Negotiations
          Between Experienced Counsel ........................................................... 15
       b.  Continued Litigation Would Have Been Complex, Expensive and
          Protracted, and May Not Have Resulted in a Recovery Exceeding the
          Settlement Amount ............................................................................. 16
       c.  Class Counsel Conducted a Thorough Investigation and Was Well-Prepared
          for Settlement Discussions ................................................................. 17
       d.  Success for the Class after a Trial Was Uncertain .................................... 18
       e.  Experienced Class Counsel, Having Thoroughly Evaluated the Case,

        Support the Settlement ........................................................................ 20

    f.  Absent Class Members Overwhelmingly Support the Settlement ............................ 20

    g.  Settlement of the Case Serves the Public Interest Because It Creates a Settlement Fund for the Class and Avoids Protracted and Expensive Court Proceedings ........................................................................ 21

    h.  The Settlement and Plan of Allocation Have Been Approved by an Independent Fiduciary ........................................................................ 21

IV.  CONCLUSION ........................................................................................ 22

Pursuant to Federal Rule of Civil Procedure 23(e) and this Court's January 8, 2009 Order Preliminarily Approving Settlement, Approving Form and Manner of Class Notice, and Scheduling Hearing on Fairness of Settlement ("Preliminary Approval Order"), Plaintiff Brenda Thurman ("Plaintiff"), by and through her undersigned attorneys ("Class Counsel"), respectfully submits this memorandum of law in support of her motion for final approval of a proposed settlement (the "Settlement") of this class action (the "Litigation") and plan of allocation of the proceeds of the Settlement ("Plan of Allocation"), and for certification of a settlement class (the "Class"). Plaintiff submits in further support of this motion the Joint Declaration of Thomas J. McKenna, Kenneth J. Vianale, Samuel K. Rosen and Paul Kent Bramlett in Support of (1) Plaintiff's Motion for Final Approval of Proposed Settlement and Certification of Settlement Class and (2) Class Counsel's Motion For Award of Attorneys' Fees and Case Contribution Award to Class Representative ("Jt. Decl." or "Joint Declaration").

## I.       INTRODUCTION

The Court should certify the Settlement Class and approve the Settlement because it is fair, reasonable and adequate. This is a class action under the Employee Retirement Income Security Act ("ERISA") brought by Brenda Thurman on behalf of a class of current and former employees of HCA, Inc. ("HCA" or the "Company"), who were invested in the HCA Inc. Retirement Plan and 401(k) Profit Sharing Plan (the "Plan"). The parties have agreed to settle the case based on Defendants' payment of $3,000,000, to be distributed among Class Members pursuant to a Plan of Allocation. As set forth below and in the Joint Declaration, the Settlement provides Class Members with a substantial benefit, without the risk or delay that would result from a trial and appeal.

1

This Litigation against HCA and Plan fiduciaries Jack O. Bovender, Jr., Richard Bracken and Robert Milton Johnson ("Individual Defendants") was filed in this district on November 22, 2005. An agreement in principle to settle the case was reached in November 2007 after an extensive investigation and a full-day mediation. After engaging in well-informed, arms'-length negotiations, the parties executed a Stipulation of Settlement that provides for the payment of $3,000,000 in cash to a settlement fund (the "Settlement Fund"). *See* Stipulation of Settlement dated November 26, 2008 ("Stip.") [D.E. 29] at ¶ 2. The Settlement Fund has been fully funded and is earning interest in an escrow account for the benefit of the Settlement Class.

This Settlement provides a substantial recovery for the Class of all current and former participants in the Plan for whose individual accounts the Plan held an interest in the common stock of HCA at any time from January 12, 2005 to and including November 17, 2006. This is an excellent recovery in a complex case where recovery after trial was highly uncertain.

The Court should approve the Settlement and Plan of Allocation, and certify the proposed Class for settlement purposes.

II.    **HISTORY AND BACKGROUND OF THE LITIGATION AND THE SETTLEMENT**

The history of the Litigation is detailed in the Joint Declaration to which Plaintiff respectfully refers the Court. Jt. Decl. ¶¶ 7-28. The relevant facts may be summarized as follows.

   A.    **Factual Basis For Lawsuit**

The Complaint alleges that HCA and the Individual Defendants, as alleged fiduciaries of the Plan, caused the Plan to make imprudent investments of Plan assets in HCA stock at a time when Defendants knew or should have known that HCA stock was a risky investment. Specifically, the Complaint alleges that beginning on or about January 2005, HCA issued to the

2

investing public inaccurate statements that had the effect of artificially inflating the stock price. The Complaint alleges that Plan fiduciaries failed to take steps to limit the Plan's exposure to the risks posed by investing in HCA stock. When the true state of HCA's finances became know, beginning in July 2005, the price of HCA stock fell precipitously, causing injury to the Plan and its Members.

### B.      Progress Of The Litigation And Settlement Negotiations

On January 17, 2006, the Court entered an order granting Class Counsel's motion to consolidate this case with any subsequently filed related actions, to appoint Brenda Thurman Lead ERISA Plaintiff and to appoint Co-Lead and Liaison ERISA Counsel. (Jt. Decl. ¶ 18). On January 13, 2006, the Court granted an agreed motion to stay this case pending the outcome of a motion to dismiss a related securities fraud class action styled *In re HCA Inc. Securities Litigation,* Case No. 05-cv-960 (M.D. Tenn.) ("HCA Securities Case"). (Id. ¶ 19).

The parties to the HCA Securities Case reached a settlement on or about July 20, 2007. As the securities settlement was being discussed, the parties in this case began to discuss a possible settlement as well. Before entering into settlement discussions, Class Counsel retained Financial Markets Analysis, LLC ("FMA") to provide an expert analysis of recoverable damages. FMA, located in Princeton, New Jersey, specializes in analyzing financial issues unique to class action cases. Class Counsel also evaluated the results of its continued investigation of the facts underlying the ERISA case.

Class Counsel and defense counsel engaged in protracted discussions regarding the terms for a possible settlement of this case. Ultimately, the parties agreed that a mediation would help them evaluate the strengths and weaknesses of their respective positions. A day-long mediation, facilitated by retired United States District Judge Nicholas Politan, took place on November 29,

3

2007. After a hard-fought session with the mediator, the parties agreed in principle to settle the case for $3,000,000, to be divided among the Class Members, after payment of court awarded attorneys' fees and expenses, and the costs of notice to the Class.

### C.   The Parties Draft A Memorandum Of Understanding And Stipulation Of Settlement

The parties signed a Memorandum of Understanding on February 6, 2008 and a Stipulation of Settlement on November 26, 2008.

Under the terms of the Settlement, Defendants have paid $3,000,000 into a Settlement Fund, to be distributed based on a Plan of Allocation among the following class:

> All current and former participants in the Plan for whose individual accounts the Plan held an interest in the common stock of HCA at any time from January 12, 2005 to and including November 17, 2006. Excluded from the Class are Defendants herein, any person who was an officer or directors of Defendant HCA Inc. at any time during the Class Period, members of Defendants' immediate families, and the heirs, successors or assigns of any of the foregoing.

The Class Period ends on November 17, 2006 because HCA redeemed and cancelled all of its publicly traded securities on that date as the result of a transaction that took the Company private. Since HCA stock no longer exists, the settlement does not provide for any ameliorative or equitable relief, limiting or regulating the Plan's future investment in HCA stock. The Settlement provides that, in return for Defendants' payment of $3 million, Class Members will release all claims against the Individual Defendants, HCA, the Plan and certain related parties arising from the Plan's investment in HCA stock during the Class Period.

### D.   The Plan Of Allocation

The parties have proposed a Plan of Allocation that is fair to Class Members and not unduly burdensome for the Plan Administrator. The Plan of Allocation uses three measuring

dates to approximate each Class Member's Class Period holdings in HCA stock. The settlement proceeds will be divided among Class Members, *pro rata*, based on the approximate amount of HCA stock each Class Member held during the Class Period. The Plan of Allocation assumes that each Class Member lost money in proportion to his or her holdings in HCA stock. The parties adopted this Plan of Allocation to avoid the considerable cost the Plan Administrator would incur if it had to calculate each Plan Member's actual loss from Class Period investments in HCA stock.

The Plan of Allocation was explained in detail in the Notice that was sent to Class Members. No Class Member has objected to the Plan of Allocation.

### E. The Settlement Has Been Evaluated And Approved By An Independent Fiduciary

Since this case settles ERISA claims on behalf of the Plan, the settlement is subject to approval by an independent fiduciary retained by the Plan. The Plan retained U.S. Trust to serve as its independent fiduciary. The parties and U.S. Trust have discussed every aspect of the Settlement. The parties agreed to change certain provisions of the Stipulation based on comments from the independent fiduciary. U.S. Trust has fully evaluated the Settlement and Plan of Allocation and concluded that they are fair to the Plan and reasonable in light of the risks attendant to this litigation. *See* Jt. Decl. Ex. A (Statement of Independent Fiduciary U.S. Trust).

### F. The Court-Approved Notice Was Sent to 113,649 Class Members and Only One Has Voiced Any Objection

Pursuant to the Preliminary Approval Order, the Court-approved Notice of Class Action Settlement ("Notice") was sent to 113,649 current and former HCA employees believed to be Class Members. *See* Jt. Decl., Exhibit B, Declaration of Ashley Barr ¶ 3 ("Barr Decl."). The

5

Preliminary Approval Order and the Notice sent to Class Members set March 9, 2009 as the date by which Class Members could object to the Settlement.

Two Class Members have communicated with the Court regarding the Settlement. *See* Jt. Decl., Exhibit D. The letter from Michelle Coelho was of a housekeeping nature. Class Counsel contacted Darla Tummond regarding her letter. Ms. Tummond said that she misunderstood the Notice, and thought it related to an issue she has with HCA regarding her wish to withdraw the money in her retirement account. Jt. Decl. ¶ 35. Ms. Tummond told counsel that she wishes the settlement could have been larger, but that she has no other dispute with the outcome of the case.

## III.  ARGUMENT

### A.  <u>The Court Should Certify The Settlement Class For Final Approval</u>

Plaintiff, pursuant to the Settlement Agreement, seeks certification under Fed. R. Civ. P. 23(b)(1) of the following non-opt-out class for settlement purposes only:

> All current and former participants in the Plan for whose individual accounts the Plan held an interest in the common stock of HCA at any time from January 12, 2005 to and including November 17, 2006. Excluded from the Class are Defendants herein, any person who was an officer or directors of Defendant HCA Inc. at any time during the class period, members of Defendants' immediate families, and the heirs, successors or assigns of any of the foregoing.

Additionally, the parties ask that Brenda Thurman be named Class Representative for settlement purposes only, and that Gainey & McKenna, Vianale & Vianale LLP and Harwood Feffer LLP be designated as Class Counsel.

This case meets every requirement for certification under Fed. R. Civ. P. 23(b)(1). Courts routinely certify ERISA class actions, as demonstrated by rulings in numerous federal courts. *See, e.g., In re Prudential Ins. Co. of Am. Sales Practice Litig.,* 148 F.3d 283, 308 (3d

6

Cir. 1998), *aff'd in part, rev'd in part on other grounds,* 278 F.3d 175 (3d. Cir. 2002) (certifying class for settlement purposes in ERISA class action); *In re Ikon Office Solutions, Inc.,* 191 F.R.D. 457 (E.D. Pa. 2000) (certification granted after hearing); *In re CMS Energy ERISA Litig.,* 225 F.R.D. 539, 545-46 (D. Mich. 2004); *In re WorldCom, Inc. ERISA Litig.,* No. 02-CV-4816, 2004 U.S. Dist. LEXIS 19786 (S.D.N.Y. Oct. 4, 2004); *Reinhart v. Lucent Tech., Inc.,* 307 F. Supp. 2d 633 (D.N.J. 2004); *In re Global Crossing Sec. & ERISA Litig.,* 225 F.R.D. 436 (S.D.N.Y. 2004). Certification is appropriate in this case as well.

### 1. The Proposed Class Meets the Requirements of Rule 23(a)

Rule 23(a) provides four prerequisites for certification:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defense of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

The first two of these requirements are intended to identify so-called "natural" class actions – those in which joinder of all interested parties is impracticable and those presenting at least one common issue of fact or law. 1 Herbert B. Newberg and Alba Conte, *Newberg on Class Actions* § 3.01. at 3-4 (2004). The third and fourth requirements define the desired attributes of the class representative. *Id.*

### a. The Class is so Numerous that Joinder of All Members is Impracticable

Defense counsel supplied the Notice Administrator with the names and addresses of 113,649 current and former HCA employees believed to be Class Members. Jt. Decl. ¶ 34. While there is no strict numerical test, "substantial numbers" usually satisfy the numerosity

7

requirement. *Daffin v. Ford Motor Co.*, 458 F.2d 549, 552 (6th Cir. 2006). *See also Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 884 n.1 (6th Cir. 1997) (deeming "frivolous" an objection on numerosity grounds to a 1000 member class). There can be no doubt that a class comprised of over 113,000 Members is sufficiently numerous to support class treatment.

**b.**     <u>There are Questions of Law or Fact Common to the Class</u>

Rule 23(a)(2) is satisfied where there are "questions of law or fact common to the class." "In general, the question of defendants' liability for ERISA violations is common to all class members because a breach of a fiduciary duty affects all participants and beneficiaries." *Banyai v. Mazur,* 205 F.R.D. 160, 163 (S.D.N.Y. 2002).

The Complaint alleges that common issues of law and fact include:

- Whether Defendants were ERISA fiduciaries;
- Whether Defendants breached their fiduciary duties;
- Whether, as a result of fiduciary breaches engaged in by the Defendants, the Plan and its participants and beneficiaries suffered losses; and
- Whether the Class is entitled to damages and injunctive relief.

Because common issues of law and fact are presented, Rule 23(a)(2) is satisfied.

**c.**     **The Claims of the Proposed Class**
<u>**Representative are Typical of Those of the Class**</u>

Rule 23(a)(3) requires that proposed class representatives present claims typical of other class members – in other words, class representatives should have the same interests and seek a remedy for the same injuries as other class members. *E. Tex. Motor Freight Sys., Inc. v. Rodriguez,* 431 U.S. 395, 403 (1977). To be typical a representative's claim need not always involve the same facts or law, provided there is a common element of fact or law. *Senter v. General Motors Corp.*, 532 F.2d 511, n. 31 (6th Cir. 1976).

8

In this action, Brenda Thurman seeks to recover for losses her fellow Class Members and she sustained as a result of Defendants' alleged breaches of fiduciary duty. Ms. Thurman's individual claim relies upon the same legal theories as the claims of her fellow Class Members. Therefore, she satisfies the typicality requirement.

### d. Brenda Thurman Has Fairly and Adequately Protected the Interests of the Class

"The adequacy of representation requirement is met when 'the representative parties will fairly and adequately protect the interests of the class.' Fed. R. Civ. P. 23(a)(4). The Sixth Circuit recognizes two criteria for determining whether the class representative will adequately protect the class's interests: (1) whether the representative has common interests with unnamed class members, and (2) whether the representatives will vigorously prosecute the interests of the class through qualified counsel. *Senter,* 532 F.2d at 524-25. To a large extent, the adequacy requirement merges with the commonality and typicality criteria of Rule 23(a)(2) and (a)(3). *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 626 n. 20 (1997).

Brenda Thurman is a former HCA employee who lost money in her retirement account as a result of allegedly imprudent class period investments in HCA stock. As such, she is in exactly the same position as other Class Members. Ms. Thurman has provided the Court with a declaration describing her efforts on behalf of the Class during the last 3 ½ years. *See* Jt. Decl. Ex. F. Ms. Thurman's declaration demonstrates that she has done everything that could be expected of a Class Representative in this case. There is no evidence that she has any interests that are antagonistic to the Class. To the contrary, all the evidence establishes her unity of interest with absent Class Members.

9

Class Counsel have attached their firms' resumes to their individual firm fee and expense declarations. *See* Jt. Decl. Ex. E. Class Counsel's firm resumes show that counsel have extensive experience in representing plaintiffs in ERISA class action litigation, and class action litigation generally. Class Counsel have handled this complex case ably, and obtained a substantial settlement for the Class. This prong of the adequacy requirement is also is clearly established.

### 2.    The Class Satisfies the Criteria of Rule 23(b)(1)

Because Plaintiff has satisfied the requirements of Rule 23(a), this Court should certify the Class if it satisfies one or more of Rule 23(b)'s three subsections. As often has been noted, the additional requirements of Rule 23(b) overlap considerably with those of Rule 23(a), and with each other. *Newberg on Class Actions* § 4.01 (2004).

This Class is appropriate for certification as a non opt-out class under Rule 23(b)(1). In fact, given the unique representative nature of a breach of fiduciary duty action under ERISA, some courts have held that an ERISA breach of fiduciary action may be certified ***only*** as a non opt-out class under (b)(1) or (b)(2). *See, e.g., Piazza v. Ebsco Indus., Inc.,* 273 F.3d 1341, 1352-53 (11th Cir. 2001) (rejecting certification of a claim alleging breach of fiduciary duty brought under ERISA § 409 on behalf of the plan under Rule 23(b)(3), and remanding for findings consistent with its ruling that such actions should be maintained under Rule 23(b)(1) or (b)(2)).

Under Rule 23(b)(1), a class may be certified if:

(1)    prosecuting separate actions by or against individual class members would create a risk of:

     (A)    inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class, or

10

(B)     adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests[.]

Rule 23(b)(1)(A) "considers possible prejudice to the defendants, while 23(b)(1)(B) looks to possible prejudice to the putative class members." *Ikon*, 191 F.R.D. at 466.

A Michigan district court approving a Rule 23(b)(1) class in a similar ERISA class action held in relevant part:

> The court agrees with plaintiffs that the claims in this litigation, alleging defendants' breaches of fiduciary and co-fiduciary duties through their 1) failure to prudently manage Plan assets, 2) failure to provide complete and accurate information to participants and beneficiaries, and 3) failure to monitor Plan fiduciaries, are brought by definition in a representative capacity, as damages awarded would inure to the plan as a whole. *See Weiner v. Klais & Co., Inc.,* 108 F.3d 86, 91-92 (6th Cir. 1997). This fact demonstrates that plaintiffs' claims "as a practical matter" would "be dispositive of the interests of the other members not parties to the adjudication." Fed. R. Civ. P. 23(b)(1)(B).
>
> *        *        *
>
> Here, as in the *Ikon* case, failure to certify could risk inconsistent rulings concerning fiduciary status of the defendants and materiality of alleged omissions. *Ikon,* 191 F.R.D. at 466. The court's ruling, therefore, is to grant plaintiff's requested class certification, under both 23(b)(1)(A) and (b)(1)(B).

225 F.R.D. at 545-46; *see also Rankin v. Rots,* 220 F.R.D. 511 (E.D. Mich. 2004); *Ikon,* 191 F.R.D. 457; *Feret v. Corestates Fin. Corp.*, No. CIV. A. 97-6759, 1998 WL 512933 (E.D. Pa. Aug. 18, 1998); *Godshall v. Franklin Mint Co.*, No. 01-CV-6539, 2004 WL 2745890 (E.D. Pa. Dec. 1, 2004). *See also Advisory Comm. Notes to 1996 Amendment of Fed. R. Civ. P.*

11

23(b)(1)(B) (stating that certification under 23(b)(1)(B) is appropriate in cases charging breach of trust by a fiduciary to a large class of beneficiaries).

Likewise, certification of a non-opt-out class under Rule 23(b)(1) is appropriate here.

### 3.      Rule 23(g)

In addition to the other requirements outlined above, Rule 23 requires the Court to examine the capabilities and resources of Class Counsel to determine whether they will provide adequate representation to the Class. Class Counsel easily meet the dictates of Rule 23(g).

The Settlement was achieved by attorneys with years of experience in ERISA law and in prosecuting and trying complex actions. Class Counsel's experience and skill were demonstrated by the effective prosecution of this action, including the substantial settlement achieved. The result achieved is the clearest reflection of Class Counsel's skill and expertise. *See In re Warfarin Sodium Antitrust Litig.,* 212 F.R.D. 231, 261 (D. Del. 2002) (class counsel "showed their effectiveness through the favorable cash settlement they were able to obtain"); *see also In re Ikon Office Sol. Inc. Sec. Lit.,* 194 F.R.D. 161, 194 (E.D. Pa. 2000)("the most significant factor in this case is the quality of representation, as measured by the quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of the counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel'").

Class Counsel's extensive experience and the substantial results achieved satisfy Rule 23(g).

This case satisfies all of the prerequisites for class certification under Rule 23. Therefore, for purposes of effectuating this Settlement, this action should be certified under Fed. R. Civ. P. 23(b)(1) as a non-opt-out class action.

12

**B.        The Proposed Settlement Is Fair, Reasonable, And Adequate To The Class**

**1.        The Law Favors and Encourages Settlements**

Because this action is a class action, the settlement must be submitted to the Court for approval under Fed. R. Civ. P. 23, which provides in pertinent part:

(e)        Settlement, Voluntary Dismissal, or Compromise.

The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval.  The following procedures apply to a proposed settlement, voluntary dismissal, or compromise:

(1)        The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.

(2)        If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.

(3)        The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.

Federal courts strongly favor the voluntary resolution of complex class actions.  *White v. NFL*, 836 F. Supp. 1458, 1476 (D. Minn. 1993) (citing *Armstrong v. Board of Sch. Directors*, 616 F.2d 305, 312-13 (7th Cir. 1980); *see also WorldCom*, 2004 U.S. Dist. LEXIS 20671, at *24; *In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 718 F. Supp. 1099, 1103 (S.D.N.Y. 1989) (compromise is particularly appropriate in complex class actions).  In class actions in particular, "there is an overriding public interest in favor of settlement."  *In re Charter Commc'n Inc. Sec. Litig.*, MDL No. 1506, 2005 U.S. Dist. LEXIS 14772, at *15 (E.D. Mo. June 30, 2005) (citing *Cotton v. Hinton,* 559 F.2d 1326, 1331 (5th Cir. 1977)); *see also Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist.,* 921 F.2d 1371, 1391 (8th Cir. 1990) (holding that the policy favoring settlement is so strong that such settlement agreements are "presumptively valid").  Furthermore, "there is a presumption of fairness when a settlement is negotiated at arm's length

13

by well informed counsel." *Charter Commc'n*, 2005 U.S. Dist. LEXIS 14772 at \*19 (citing *Weinberger v. Kendrick*, 698 F.2d 61, 74 (2d Cir. 1982)).

The Court has wide discretion in determining whether to approve a class action settlement, however the Supreme Court has cautioned that in reviewing a proposed class settlement, a court should "not decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc.,* 450 U.S. 79, 88 n. 14 (1981). *See also City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 462 (2d Cir. 1974). *Accord In re Visa Check/Mastermoney Antitrust Litig.,* 297 F. Supp. 2d 503, 509 (E.D.N.Y. 2003). Because the object of the settlement is to avoid, not confront, the determination of contested issues, the approval process should not be converted into an abbreviated trial on the merits. *Van Horn v. Trickey*, 840 F.2d 604, 607 (8th Cir. 1988) ("the court need not undertake the type of detailed investigation that trying the case would involve"). Instead, the Court's inquiry should be limited to the consideration of whether the proposed settlement is "fair, reasonable and adequate." *Gottlieb v. Wiles*, 11 F.3d 1004, 1014 (10th Cir. 1993) (citing *Jones v. Nuclear Pharmacy, Inc.,* 741 F.2d 322, 324 (10th Cir. 1984)). Rather, when experienced counsel have negotiated and presented a settlement that has been negotiated at arm's-length in an adversarial setting, there is an initial presumption that the settlement is fair and reasonable. *Minolta Camera Prods. Antitrust Litig.,* 668 F. Supp 456, 460 (D. Md. 1987); *Chatelain v. Prudential-Bache Sec., Inc.,* 805 F. Supp. 209, 212 (S.D.N.Y. 1992) (a strong initial presumption of fairness attaches to the proposed settlement if the settlement is reached by experienced counsel after arm's-length negotiations, and great weight is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation).

14

Moreover, preliminary approval gives rise to a presumption that the settlement is fair, reasonable and adequate. *New England Health Care Emp. Pension Fund v. Fruit of the Loom, Inc.*, 234 F.R.D. 627, 631 (W.D. Ky. 2006).

## 2. The Sixth Circuit's Standards Governing Class Action Settlement

Courts in the Sixth Circuit have identified the following factors that should guide the district court's inquiry on a motion to approve a class action settlement: (1) whether the settlement is the product of arm's length negotiations as opposed to collusive bargaining, (2) the complexity, expense and duration of further litigation, (3) the amount of discovery engaged in by the parties, (4) the likelihood of success on the merits weighed against the amount and form of the relief offered in the settlement, (5) the judgment of experienced counsel who have competently evaluated the strengths of their proof; (6) the reaction of absent class members, and (7) whether the settlement is consistent with the public interest. *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 522 (E.D. Mich. 2003). The district court has wide discretion in assessing the weight and applicability of these factors. *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205-06 (6th Cir. 1992). Each of these factors supports court approval of the settlement in this Action.

### a. The Settlement Is the Result of Arms' Length Negotiations Between Experienced Counsel

This settlement should be approved because it is the product of arms' length negotiations between experienced counsel. Before attending the mediation that led to the Settlement, Class Counsel had conducted a thorough investigation, filed a detailed Class Action Complaint, retained a damages expert to calculate class-wide damages, and engaged in protracted, arms' length settlement discussions. The Settlement reached provides a substantial benefit to the

15

Class.  There is no evidence supporting a finding of collusion between the opposing sides in this lawsuit.  *See In re Telectronics Pacing Sys., Inc*. 137 F. Supp. 2d 985, 1016 (S.D. Ohio 2001) ("Courts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement unless evidence to the contrary is offered").

> **b.    Continued Litigation Would Have Been Complex, Expensive and Protracted, and May Not Have <u>Resulted in a Recovery  Exceeding the Settlement Amount</u>**

Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them.  *Telectronics*, 137 F. Supp. 2d at 1013.   Had this class action case not settled, the proceedings would have been protracted, expensive and highly complex.  This factor heavily favors settlement approval.

ERISA claims for breach of fiduciary duty have four major components, requiring different types of proof.  A Plaintiff must prove (i) that each defendant is a fiduciary; (ii) that each fiduciary defendant breached a duty; (iii) that the breaches caused damage; and (iv) the amount of damages which are attributable to the fiduciary breaches.  Each of these matters would have been difficult to prove in this case.   Organizing the proof, deposing all the hands-on fiduciaries and various professional employees performing work for the Plan, as well as retaining experts on fiduciary practice, accounting, ERISA, and damages would have been both difficult and expensive.

Further, Plaintiff would have to establish at trial that HCA stock was artificially inflated as a result of fraud, in a context in which no criminal or civil charges were ever filed by the SEC.  Certainly, a plan investment offering can become imprudent for a variety of reasons other than securities fraud.  *See, e.g., Pa. Fed'n, Bdh. of Maint. of Way Employees v. Norfolk Southern Co.,* No. 02-CV-9049, 2004 U.S. Dist. LEXIS 1987 (E.D. Pa. Feb. 4, 2004) (same).  Establishing both

16

imprudence and the failure of the fiduciaries to respond appropriately would be extremely complicated and also costly. Payment of these expenses, as well as compensation for attorney time expended on these issues of proof, ultimately would reduce any judgment.

The legal and factual complexities of this case would make it expensive to litigate, and if fully litigated, it could take years to resolve through trial and possible appeals. Given the unsettled state of the law, Defendants would have every incentive to appeal an adverse result. The Settlement, which was negotiated through mediation with a highly skilled and experienced mediator, presents the opportunity for a guaranteed benefit to the Class with relatively limited costs and fees incurred. Settling the case now, before millions of more dollars are spent on costs and fees by both sides, will result in an enormous savings of time and money to the parties, the Class, and the Court. *See, e.g., Ikon, 194 F.R.D. at 194-95* (finding that the complexity and duration of litigation of similar breach of fiduciary duty claims, as well as the expense of litigation and risks of establishing liability and damages, weighed heavily in favor of settlement). The second factor to consider in respect to this settlement – complexity, expense, and the probable duration of litigation – therefore strongly militates in favor of approval.

c.      **Class Counsel Conducted a Thorough Investigation and Was Well-Prepared for Settlement Discussions**

Prior to mediating the case, Class Counsel conducted a thorough investigation into Plaintiff's claims, the underlying events and transactions alleged in the Complaint, and the operations and administration of the Plan. This investigation included, among other acts, conducting individual interviews with Plan participants, researching HCA, reviewing documents pertaining to the Plan, its operation, and underlying events, and analyzing potential damages. As a result of this investigation, and informal discussions with defense counsel, Class Counsel was

17

able to evaluate the strengths and weaknesses of the case, and participate intelligently in settlement discussions.

In evaluating the fairness of a settlement, the absence of formal discovery is not unusual or problematic, so long as the parties and the court have adequate information in order to evaluate the relative positions of the parties. *Int'l Union Workers of America v. Ford Motor Co.*, No. 07-CV-14845, 2008 WL 4104329, at *26 (E.D. Mich. Aug. 29, 2008). In this case, Class Counsel's investigation and its expert's analysis of damages enabled Class Counsel to gauge the value of the case for settlement purposes.

### d.    Success for the Class after a Trial Was Uncertain

**Proving Liability Would Have Been Difficult**. Plaintiff would have faced numerous hurdles in establishing Defendants' liability and proving the existence and extent of any damages to the Plan and the Class. To prevail on their ERISA claims, the Class must show that each defendant failed to comply with his or her duties under ERISA, a daunting undertaking considering the uncertainty in this evolving area of the law. Defendants would likely present a number of defenses that have been upheld by courts as preventing ERISA recovery on behalf of a plan's participants. These include: (1) that, as a matter of law, HCA stock was not an "imprudent" plan investment; (2) that Defendants did not function as ERISA fiduciaries with regard to Plan investments in HCA stock; (3) that Plaintiff failed to plead or prove that HCA and the Individual Defendants breached their fiduciary duty to monitor their alleged appointees; (4) that Plaintiff failed to prove that Defendants breached their fiduciary duty to disclose complete and accurate information to Plan participants (to the extent that such a duty exists); and/or (5) that Plaintiff failed to properly state a claim for co-fiduciary liability. On the issue of imprudency, some courts have held that a company's ERISA plan may continue investing in the

18

company's own stock as long as the company is not facing bankruptcy or imminent collapse. *See, e.g., DiFelice v. US Airways, Inc*., 397 F. Supp. 2d 735 (E.D. Va. 2005). HCA's financial condition was not so dire as to satisfy this standard. Even if the Court declined to adopt the "imminent collapse" line of cases, at summary judgment and trial, Plaintiff would have faced a presumption under Sixth Circuit law that Defendants' decision to invest the Plan in HCA securities was reasonable. *See Kuper v. Iovenko*, 66 F.3d 1447, 1459 (6th Cir. 1995). This presumption would have presented a daunting burden to Plaintiff.

**Establishing Damages Would Have Been Difficult**. The calculation of ERISA damages is "complex, time-consuming and expensive." *See, e.g., In re Global Crossing Sec. & ERISA Litig.,* 225 F.R.D. 436, 460 (S.D.N.Y. 2004). Had this case not settled, calculation of damages would have to be brought through a full discovery process and adjudication. The judge, as trier of fact, would have been required to determine the time period (if any) during which investment in HCA stock was "imprudent" for the plan. *See Donovan v. Bierwirth,* 754 F.2d 1049, 1057 (2d Cir. 1985)*.* Damages calculations in ERISA cases like this are, in practice, computer-and-expert-intensive. The proof invariably requires a sophisticated computer model of the plan involved, usually tracking the assets held by the plan and its participants, purchases and sales of the individual accounts of participants as well as any relevant assets held, purchases and/or sold by the plan but not allocated to its participants. These calculations must be repeatedly performed to calculate damages suffered by each participant's account as well as the plan as a whole. An expert must create the model, test it, and effectively explain it. This sort of complexity, or the possibilities of glitches in the model, can have unexpected results. Thus, this type of complexity favors early resolution. *In re Warner Commc'n Sec. Litig.,* 618 F. Supp. 735, 744 (S.D.N.Y. 1985); *Bonime v. Doyle,* 416 F. Supp. 1372 (S.D.N.Y. 1976), *aff'd,* 556 F.2d 554

19

(2d Cir. 1977) (difficulty in determining damages a factor supporting settlement).  This factor, like the others, plainly militates in favor of settlement.

**e.      Experienced Class Counsel, Having Thoroughly Evaluated the Case,  Support the Settlement**

Where counsel are reputable practitioners and experienced in complex class action litigation, their collective judgment in favor of settlement is entitled to considerable weight.  *Int'l Union Workers*, 2008 WL 4104329, at *26.  Class Counsel bring to this case many years of experience in handling complex class action cases, including ERISA cases.  Class Counsel have served in this case since it was initially filed in 2005.  They conducted the investigation, retained and consulted with the damages expert, and participated in a full-day mediation during which the strengths and weaknesses of the case were fully vetted.

Class Counsel and Class Representative Brenda Thurman fully support the Settlement reached in this case.  Their whole-hearted endorsement of the Settlement supports Settlement approval.

**f.      Absent Class Members Overwhelmingly Support the Settlement**

As required under the Preliminary Approval Order, Plaintiff caused the Court-approved Notice of Class Action Settlement to be mailed to approximately 113,000 Class Members, and posted the Notice on the Notice Administrator's website.  Jt. Decl. ¶ 34.

Only Class Member Darla Tummond has expressed any objection to the Court regarding the Settlement.  *See* Jt. Decl., Ex. D.  Class Counsel spoke to Ms. Tummond by telephone and she said that she misunderstood the Notice, and thought it related to an issue she has with HCA regarding her wish to withdraw the money in her retirement account.  Jt. Decl. ¶ 35.  She wrote her letter to express her frustration with her inability to resolve this unrelated issue.  Ms.

20

Tummond told Class Counsel that she wishes the Settlement could have been larger, but that she has no other dispute with the outcome of the case. *Id*.

That only one objection was received from over 113,000 Class Members favors approval of the settlement. *See, e.g., Telectronics*, 137 F. Supp. 2d at 1018 ("Generally a diminutive amount of objectors may signify that a settlement is fair").

**g.** **Settlement of the Case Serves the Public Interest Because It Creates a Settlement Fund for the Class and Avoids <u>Protracted and Expensive Court Proceedings</u>**

A settlement in this complex class action serves the public interest by conserving the resources of the parties and the Court, and by promoting the "strong public interest in encouraging settlement of complex litigation and class action suits." *See Int'l Union Workers*, 2008 WL 4104329, at *28. The settlement avoided protracted proceedings, and obtained a substantial recovery for a large Class of current and former HCA employees. The public interest is well served by the $3,000,000 settlement reached in this case.

**h.** **The Settlement and Plan of Allocation have <u>been Approved by an Independent Fiduciary</u>**

Another factor favoring approval of the Settlement is the fact that a qualified and independent fiduciary, retained by the Plan, has studied the Settlement's terms and has approved it. *See* Jt. Decl. Ex. A (Statement of Independent Fiduciary U.S. Trust). Courts evaluating settlements of similar claims have cited with approval independent fiduciary review of a settlement's terms. *See, e.g., Global Crossing,* 225 F.R.D. at 462 (noting that such review helps to drastically reduce "the likelihood of a collusive settlement between defendants and plaintiffs' lawyers at the expense of the plaintiff class[]").

21

In sum, the Settlement is fair, reasonable and adequate under the governing standards for evaluating class action settlements in this District. Further, certification of a non-opt-out settlement class is appropriate pursuant to Rule 23 of the Federal Rules of Civil Procedure and the Notice plan more than meets the requirements of due process.

Each term and detail of the Settlement was the product of spirited and extensive arms' length negotiations, with the assistance of a highly skilled and experienced mediator. Additionally, the Settlement was thoroughly vetted by an independent fiduciary, U.S. Trust, which has voiced its approval. Moreover, the approved Class Notice process undoubtedly satisfies the requirements of due process – the individual and web based forms of notice used are consistent with the forms of notice utilized in analogous actions.

IV.     CONCLUSION

The proposed Settlement is fair, reasonable and adequate, and provides substantial benefits to the Class Members. The Settlement is the result of extensive arms' length negotiations by the parties through a highly skilled and experienced mediator, and provides substantial benefits to the Class of Plan participants and fully, fairly, and favorably resolves Plaintiff's claims. This is evidenced by the fact that only one of over 113,000 Class Members has objected to the Settlement terms.

For these and the other foregoing reasons detailed above, Plaintiff respectfully requests that the Court certify the Class for Settlement purposes, appoint Brenda Thurman as its representative, and approve the Settlement in all respects on a final basis.

Respectfully submitted this 16th day of March 2009.

**BRAMLETT LAW OFFICES**

By: s/ Paul Kent Bramlett
    Paul Kent Bramlett
P.O. Box 150734
Nashville, TN 37215
Tel: (615) 248-2828

***Liaison Counsel for Plaintiff***

Kenneth J. Vianale
**VIANALE & VIANALE LLP**
2499 Glades Road, Suite 112
Boca Raton, FL 33431
Tel: (561) 392-4750

Robert I. Harwood
Samuel K. Rosen
**HARWOOD FEFFER LLP**
488 Madison Avenue, 8th Floor
New York, NY 10022
Tel: (212) 935-7400

Thomas J. McKenna
**GAINEY & MCKENNA**
295 Madison Avenue, 4th Floor
New York, NY 10017
Tel: (212) 983-1300

***Co-Lead Counsel for Plaintiff and the Class***

23

## CERTIFICATE OF SERVICE

I hereby certify that service of the foregoing document was made upon the following Filing Users through the Electronic Filing System:

Steven A. Riley/Amy E. Neff/James N. Bowen
Riley Warnock & Jacobson, PLC
1906 West End Avenue
Nashville, Tennessee 37203
sriley@bowenriley.com
aneff@bowenriley.com
jimbowen@bowenriley.com

*Attorneys for Defendants*

SO CERTIFIED this 16th day of MARCH, 2009.

*s/Paul Kent Bramlett*
PAUL KENT BRAMLETT

24